# TAXATION

**PROPERTY TAX – MUNICIPALITIES – MUNICIPALITIES HAVE AUTHORITY TO ESTABLISH SEPARATE CLASSIFICATIONS FOR LAND AND IMPROVEMENTS TO LAND**

January 25, 1995

*The Honorable Michael R. Gordon*
*House of Delegates*

You have requested our opinion regarding the authority of municipalities to establish separate classifications of property for municipal tax purposes only. Specifically, you asked:

1.     Does Article 15 of the Maryland Declaration of Rights grant authority for a two-tier taxation system?

2.     May a separate classification be created just for land?

3.     Do municipalities already have the authority to establish the classifications proposed in House Bill 525 of the 1994 Session, which was vetoed by the Governor?

For the reasons stated below, we conclude that the answer to each of these questions is yes.

## I

### Article 15 of the Declaration of Rights

The power to tax has been recognized as one of the inherent powers of sovereignty. The power to classify property for purposes of taxation is incidental to that power. The extent of this power is restricted, however, by both the Maryland Constitution and the United States Constitution. *State Tax Commission v. Gales*, 222 Md. 543, 161 A.2d 676 (1959). For the questions addressed in this opinion, the restrictions imposed by Article 15 of the Declaration of Rights are most relevant.

Originally, Article 15 provided in relevant part that "every ... person in the State ... ought to contribute his proportion of public taxes for the support of the government according to his actual worth in real or personal property...." Constitution of 1776 (former Article 13 of the Declaration of Rights). Through each successive constitution, the provision was essentially unchanged. Article 15 of the Declaration of Rights, as adopted in 1867, declared that "every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the Government, according to his actual worth in real or personal property."

So worded, Article 15 was interpreted to mean that all property must be uniformly taxed. The framers "declared that everyone ought to contribute his proportion of taxes according to the value of his property, and in order that everyone should bear his just proportion and no more it follows as a necessary corollary that all taxes levied upon property should be equal and uniform according to its actual value." *State v. Philadelphia, W. & B. R.R. Co.*, 45 Md. 361, 377 (1876). With the exception of the recognized but limited authority to create tax exemptions, the State could not create different classes for different tax treatment. Even the granting of partial exemptions was prohibited, because such a grant was considered tantamount to creating separate classes for different tax treatment. *See* 37 *Opinions of the Attorney General* 424 (1952).

The original restrictions against classifications were later relaxed by amendments to Article 15. In Chapter 779 of Laws of Maryland 1912, the General Assembly established a commission to review the entire property taxation scheme in the State. The report of that commission specifically addressed the need for the power to classify:

> The language of the present section amounts to a tax against persons, not property, and should be amended, and should also be amended to remove any doubt as to the power of the Legislature to make reasonable classifications of property.

*Report of the Commission for the Revision of the Taxation System of the State of Maryland and City of Baltimore* 35 (1913). That review resulted in Chapter 390 of the Laws of Maryland 1914 (ratified on

November 2, 1915).  This amendment to Article 15 clearly permitted classification:

> [T]hat the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and subclassifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or subclass of improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy....

This amendment to Article 15 was discussed in considerable detail in 37 *Opinions of the Attorney General* 424 (1952).  That opinion, referring to the 1913 report cited above, concluded that the purpose of the amendment was to permit classifications.  37 *Opinions of the Attorney General* at 432.  The opinion also rejected the suggestion that the General Assembly had the power to classify only for purposes of tax rates, but not for purposes of valuation or assessment.  Rather, the General Assembly could treat different classes differently, as long as the classifications were reasonable.  37 *Opinions of the Attorney General* at 433.

Consequently, in the view of the Attorney General, the classification issue had been fundamentally changed.  The question no longer was whether the General Assembly had the power to classify property for tax purposes.  Instead, it was whether the classifications themselves were reasonable.

A few years later, in *Sears, Roebuck & Co. v. State Tax Comm'n*, 214 Md. 550, 136 A.2d 567 (1957), the Court of Appeals reviewed a policy of the State Department of Assessments and Taxation ("SDAT") under which an inflationary factor was applied to the value of real property but not to the value of personal property. After finding that personal property and real property were classified alike for assessment purposes, the Court held that all property within the same classification must be valued by the same yardstick.  Consequently, the Court found that this taxation scheme

treated property within the same class differently and therefore was unconstitutional.  214 Md. at 557.

In response to that case, the General Assembly passed Chapter 73 of the Laws of Maryland 1958, which separately classified real and personal property.  The preamble to the bill stated that Article 15 "confers upon the General Assembly the right to provide for the separate assessment of land and classification and sub-classification of personal property as it may deem proper," and that "it is the intention of the General Assembly to classify real property separate and distinct from personal property ..." for assessment purposes.

The Court of Appeals relied on that specific language when interpreting the amended statute in *National Can Corp. v. State Tax Commission*, 220 Md. 418, 153 A.2d 287 (1959), *appeal dismissed*, 361 U.S. 534 (1960).  The Court held that the power to classify for purposes of taxation was conferred by the 1915 amendment to Article 15, that there was no continuing obligation to tax different classes uniformly, and that different rates could be applied to real and personal property in different classes.  The Court also stated that the applicable test was of "the reasonableness of the classification rather than the method by which a difference in the amount of taxes is effected ...." 220 Md. at 429.  Accordingly, the Court upheld the classification of real and personal property for different tax treatment.

The issue was addressed again, this time concerning land classification, in *State Tax Commission v. Gales*, 222 Md. 543, 161 A.2d 676 (1959).  Chapter 9 of the Laws of Maryland 1956 directed that farm land was to be valued based on its agricultural use and not on any other basis.  The underlying purpose was to encourage farming by removing the growing tax burden caused by the appreciation of land near metropolitan areas.  The Court of Appeals again recognized that the General Assembly had the power to classify and subclassify both improvements to land and personal property, but that the classifications must not be arbitrary or unreasonable. 222 Md. at 549-50.  However, the Court determined that Article 15, as amended, did not allow the classification of land. Therefore, farm assessments, which involved the separate tax treatment of a class of land, were held to be in violation of Article 15.  222 Md. at 563.

In response to that case, Article 15 was amended by Chapter 64 of the Laws of Maryland 1960. With that amendment, Article 15 evolved to its present language:

> [T]hat the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective powers may have directed to be subjected to the tax levy. . . .

The 1960 amendment removed the bar against land classification. Present law reflects that expansion of authority by establishing several classifications of land based on use, *i.e.*, farm land, marshlands, woodland, land of country clubs, and land for planned development use. *See* §8-101(b) of the Tax-Property ("TP") Article, Maryland Code. The authority for these classifications is beyond challenge at this point.

Accordingly, the creation of a two-tier taxation scheme would have to be effectuated by the creation of separate classes. Once appropriate classifications were codified, the members of each class could be treated differently as to rate, assessment percentage, or method of valuation. *National Can*, 220 Md. at 429. The only test would be the reasonableness of the classification. Any such classification would be upheld if it was based upon a reasonable distinction grounded in an appropriate government policy.

The law has required the separate assessment of land and improvements to land at least since 1929. *See* former Article 81, §14, *as recodified by* Chapter 226 of the Laws of Maryland 1929. Consequently, the distinction between land and improvements has long been recognized and would seem to provide an acceptable criterion for a classification if that distinction was necessary to promote an appropriate government policy. *See* letter of advice from Assistant Attorney General Richard E. Israel to William S.

Ratchford, II, Director of the Department of Fiscal Services (January 17, 1992).[1]

## II

### House Bill 525

House Bill 525 of the 1994 Session was a bill to create, according to its title, "separate subclasses in real property for land and improvements to land for municipal corporations." This creation of two classes would have allowed different tax treatment to be imposed on each class. The bill was passed by the General Assembly but vetoed by Governor Schaefer, so it never became law.[2] The last question posed in your letter is whether municipalities already have the authority to establish classifications that would have been granted by House Bill 525. The answer is yes.

TP §6-203(a) states that "municipal corporation[s] may impose municipal corporation property tax on those classes of property that it selects to be subject to municipal corporation property tax." That

---

[1] Separate tax treatment of land and improvements raises a practical problem, however. Land is not normally sold separately from the improvements on it. Therefore, the allocation of value between land and improvements is not based on actual sales data, but on methods and formulas recognized in the appraisal industry. For example, one does not normally find a $400,000 house on a $20,000 lot or a $50,000 house on a $75,000 lot. Rather, land normally represents 25 to 35 percent of the market value of a residence on a standard lot. Adjustments may be necessary for size variations, topography and other characteristics. Yet, when a taxpayer challenges the value assigned to his property, it is always the total value that is challenged, not the allocation. *Atlantic Venture, Inc. v. Supervisor of Assessments of Baltimore City,* 94 Md. App. 73, 615 A.2d 1210 (1992). The creation of a two-tier assessment will mean that the accuracy of the allocation will also be subject to challenge. Consequently, it will necessitate considerably more effort to ensure the accuracy of the allocation, and not just the overall value, and to defend that allocation. However, municipalities must accept the assessed value as determined by SDAT. TP §6-204(b).

[2] The Governor expressed policy reservations about so-called "land value taxation" and called for the issue to be studied before statewide authorization is granted. Veto message of May 26, 1994, Laws of Maryland 1994 at 3881.

authority seems unique when compared to that of the State and counties, which do not have comparable authority. *See* TP §§6-201 and 6-202. However, municipal authority is then limited by TP §6-203(b): "Except as otherwise provided by this article, the municipal corporation property tax is imposed only on assessments made under Title 8 of this article."

Title 8 establishes the methods of valuation and assessment. TP §8-101 specifically lists those classifications of property created by the General Assembly. The question is whether municipalities must select from the classes established in TP §8-101 or whether they may establish their own classes for local purposes.

TP §6-303(a) directs each municipality to set the tax rate annually for the next taxable year on all assessments of property subject to the municipal tax. TP §6-303(a)(2) states that the municipality "may set special rates for any class of property that is subject to the municipal property tax rate." Then, TP §6-303(c) indicates that, "[e]xcept as provided in subsection (a)(2) of this section and §6-305 of this subtitle," the municipality must impose a single tax rate. Consequently, these sections, read together, seem to indicate that there is but one rate, except for authorized "special rates" or tax differentials.[3] However, a broader legislative objective

---

[3] A tax differential is an adjustment to a general tax rate because of overlapping services being provided by two taxing authorities. If trash removal was done by both a county and a municipality, for example, the full tax rate of each would include that cost. Since the benefit will only be provided by one jurisdiction, a tax differential, *i.e.* a different tax rate, is allowed to accommodate the difference in the services being provided by the other jurisdiction. TP §§6-305 and 6-306. *Griffin v. Anne Arundel County*, 25 Md. App. 115, 333 A.2d 612 (1975).

"Special assessments" is a term of art that addresses a tax assessment based solely upon a special benefit being conferred upon property by some public project, *e.g.* installation of water and sewer lines. The requirements of uniformity do not apply. *Leonardo v. County Commissioners,* 214 Md. 287, 134 A.2d 284 (1957) *cert. denied*, 355 U.S. 906, *rehearing denied*, 355 U.S. 967 (1958). *See* 63 *Opinions of the Attorney General* 16 (1978).

Consequently, property within the same class may have different tax rates without offending the uniformity requirements of Article 15 if it is for the purposes described above. However, the statutory history of TP §§6-203 and 6-303 does not support limiting "special rates" to those circumstances.

seems to have been lost in the recodification of former Article 81 in the Tax-Property Article.

In the first session after the ratification of the 1915 amendment to Article 15, which created the authority for classifying property, the General Assembly passed Chapter 656 of the Laws of Maryland 1916, the predecessor of the very sections under review.  Chapter 656, which became former Article 81, §269, stated as follows:

> That all incorporated towns within this State be, and the same are hereby directed to follow for local purposes the rules for uniform taxation within their respective jurisdictions as to land and uniform taxation within each class or subclass of improvements in personal property as provided for the levying of State, county and City taxes by the amendment to Article 15 of the Declaration of Rights of the Constitution of Maryland....  And the said incorporated town shall likewise have the power, anything in their charters granted to them to the contrary notwithstanding, but subject to the Public General Laws of the State, to determine the classes of property which shall be the subject of taxation within their respective jurisdictions and for their local purposes; provided, however, that they follow the rules of classification for taxation established by said Article 15 and any supplementary legislation enacted in conformity therewith....

The next major recodification of the tax code occurred in 1929, and again a tax commission was established prior to the recodification. The first draft of the recodification published in June 1928 omitted the above-quoted section. *Preliminary Report of The Maryland Tax Revision Commission* (1928).  The second draft, published later in 1928, specifically added a §9, as follows:

> Any incorporated town in this State shall have power (a) to select as the subjects of town taxation such classes of personal property, of land, or improvements on land, assessable under this Article, as it may deem wise, and

> (b) to levy such special or limited rates of town taxation as it may deem wise on any class of property so selected as a subject of town taxation for which a fixed or limited rate of town taxation is not prescribed by this Article....

The editor's note indicated that §9 was a recodification of previous Article 81, §269 "without, however, in any material respect affecting the substantive operation." *Report of The Maryland Tax Revision Commission* (1928).

Furthermore, the final draft that became law added §27(h), specifically granting towns the authority to change their tax rates to offset any loss affected by exemptions or partial exemptions of the classifications created in §9. Section 27(h) stated:

> Any incorporated town shall have the power to change the tax rate fixed by its charter upon property taxed under Section 9 of this Article, to the extent of covering any loss in revenue in case it may have determined upon the exemption or partial exemption of certain classes or subclasses of property under said section, or may have determined upon any special or limited rates of town taxation thereon.

The language of these sections clearly establishes that municipalities retained the authority to classify property for local purposes and to impose different tax treatment on those classes. Section 9 provided for different tax rates being applied to separate classifications chosen by the municipality, and §27(h) allowed adjustments to the full rate because of any loss in income sustained because of a different tax treatment being applied to the different classes. These two sections, renumbered as §§12 and 30(b), remained in former Article 81 without any change in language (except the substitution of the State Department of Assessments and Taxation for the State Tax Commission and other non-substantive additions).

When the Tax-Property Article was enacted in 1985, TP §6-303 included the recodified version of these provisions. Although the Revisor's Note referred to clarifying changes in language, the recodification does not reflect an intent to diminish municipal

authority that had been on the books since 1916. "It is a settled principle of statutory construction that a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Duffy v. Conaway*, 295 Md. 242, 257, 455 A.2d 955 (1983). *See also In re Special Investigation No. 236*, 295 Md. 573, 458 A.2d 75 (1983).

The issue of authority to classify was previously addressed by the Attorney General in the context of exempting property for foreign governments. In 50 *Opinions of the Attorney General* 425 (1965), Attorney General Burch distinguished the authority of the counties and municipalities. The opinion indicated the counties could not create their own exemptions without specific authority, which had not been granted. However, the opinion also concluded that the municipalities had that authority:

> The General Assembly has provided in Article 81, Section 12 of the Annotated Code of Maryland (1957) that incorporated towns in this State shall have the power to select as the subjects of town taxation such classes of land and improvements on land as it may deem wise. The corollary of the power to select is the power to exempt, and thus, it is our opinion that incorporated towns in this State could exempt from town taxation by appropriate ordinance real property owned by foreign governments.

This same conclusion was reached in Opinion No. 89-030 (August 10, 1989) (unpublished):

> Thus, municipal corporations are understood to have express power to exempt classes of property from taxation. Moreover, because municipal corporations may select the classes of property to be taxed [TP §6-203(a)] and 'may set special rates for any class of property that is subject to the municipal corporation property tax' [TP §6-303(a)(2)], they clearly have the authority to levy different rates on selected classes of property.

In *Rosecroft Trotting and Pacing Association, Inc. v. Prince George's County*, 298 Md. 580, 471 A.2d 719 (1984), the Court of Appeals addressed that county's authority to classify for tax purposes. The Court determined that counties did not have that authority, but it arrived at that conclusion by analyzing the difference between the authority of municipalities and the authority of the counties. The Court referred to Chapter 656 of the Laws of Maryland 1916 as the creation of municipal power to classify property for tax purposes and found that this delegation of authority still existed in former Article 81, §§12 and 30. The Court then held that "Section 12 in express terms provides, *but only for municipalities*, the type of authorization [i.e. the authority to tax different classes at different rates] which Prince George's seeks to achieve ...." 298 Md. at 584 (emphasis supplied). Consequently, the Court recognized that the delegation of authority to the municipalities in 1916 by Chapter 656 was still effective.

## III

### Conclusion

In summary, it is our opinion that municipalities already have the authority to establish reasonable classifications and to treat those classes differently for tax purposes. Therefore, the specific delegation of that authority by House Bill 525 of 1994 was unnecessary.

J. Joseph Curran, Jr.
*Attorney General*

David M. Lyon
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*